ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 23 2011

at 11 o'clock and 18 min. P M.
SUE BEITIA, CLERK

ATTORNEY TERRY G. OPPERMANN #2764
Seven Waterfront Plaza
500 Ala Moana Blvd., Suite 7-400
Honolulu, HI 96813-4920
PH: (808) 543-8330
FAX: (808) 833-2744
email: toppermann@hotmail.com

Attorney for Plaintiff
WILLIAM E. NEWCOMB aka
BOB NEWCOMB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

WILLIAM E. NEWCOMB also known as BILL NEWCOMB,

Plaintiff,

vs.

CAMBRIDGE HOME LOANS, INC; OPTION ONE MORTGAGE CORPORATION A California Corporation; AMERICAN HOME MORTGAGE SERVICING INC.; DEUTSCHE BANK NATIONAL TRUST COMPANY; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE "NON-PROFIT" ORGANIZATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL AGENCIES 1-10; DOE JOINT VENTURES 1-10, Inclusive,

Defendants.

CASE NO: 09-CV-00567-DAE-KSC
Civil No. 09-1-420K
In the Circuit Court of the Third Circuit, State of Hawai'i

SECOND AMENDED COMPLAINT; EXHIBIT "A"
SECOND AMENDED SUMMONS;

1. Real Estate Settlement Procedures Act Violation
2. Home Ownership Equity Protection Act Violation
3. Gramm-Leach-Bliley Act Violation
4. Unfair and Deceptive Trade Practices Act Violation
5. Negligent or Intentional Concealment
6. Fair Credit Report Act Violation
7. Breach of Contract
8. Rescission
9. Conversion
10. Unjust Enrichment
11. Breach of Implied Covenant Of Fair Play And Good Faith Violation
12. Breach of Professional or Fiduciary Duty
13. Fraud In the Inducement

SECOND AMENDED COMPLAINT

A. **Jurisdiction**

Comes now, Plaintiff above-named, by and through his

ORIGINAL

Attorney, Terry G. Oppermann, and complains:

1. Plaintiff William E. Newcomb, also known as, Bill Newcomb ("Plaintiff"), is a resident of Kailua-Kona, Island, County and State of Hawai'i.

2. On or about October, 2005, Plaintiff procured a mortgage loan from Defendant Cambridge Home Loans, Inc, and/or it's affiliates, for real property located at 77-107 Queen Kalama Ave., Kailua-Kona, HI 96740, TMK: (3)) 7-7-177, in the approximate amount of $800,000.00

3. Defendant Cambridge, thereafter and/or at the same relevant times herein assigned, sold, involved, and/or entered into contract with Defendant Option One Mortgage Corporation and/or with other successor Defendants, American Home Mortgage Servicing, Inc. and Deutsche Bank National Trust Company, herein ("Defendants"), and who have all entered into the jurisdiction of the State of Hawai'i for the purpose of procuring real estate mortgage lending and/or mortgage servicing of loan placement or collection with Plaintiff.

4. Defendants John and Jane Does 1-10, Doe Corporations 1-10, Doe "Non-Profit" Organizations 1-10, Doe Partnerships 1-10, Doe Governmental Entities 1-10, and Doe Joint Ventures 1-10, Inclusive, are persons, corprations, non-profit organizations, partnerships, governmental entities, and joint ventures, who are unknown parties whose name or parts thereof, Plaintiff has been unable to ascertain but who are or may be necessary parties to this action. At such time as the true names, addresses and capacities of these Defendants become knwon

to Plaintiff, counsel will file an amended complaint naming said necessary parties as named Defendants. Counsel for Plaintiff is filing this allegation pursuant to Hawaii Rules of Civil Procedure, Rule 17 and the representations contained herein are being made in good faith.

B. History

5. On or about October, 2005, Plaintiff procured a mortgage loan from Defendant Cambridge Home Loans, Inc, and/or it's affiliates, for real property located at 77-107 Queen Kalama Ave., Kailua-Kona, HI 96740, TMK: (3)) 7-7-177, in the approximate amount of $800,000.00

6. Defendant Cambridge, thereafter and/or at the same relevant times herein assigned, sold, involved, and/or entered into contract with Defendant Option One Mortgage Corporation and/or with other successor Defendants, American Home Mortgage Servicing, Inc. and Deutsche Bank National Trust Company, herein ("Defendants"), and who have all entered into the jurisdiction of the State of Hawai'i for the purpose of procuring real estate mortgage lending and/or mortgage servicing of loan placement or collection with Plaintiff.

7. On October 6, 2009, Plaintiff filed his Complaint initiating this action in the Third Circuit Court of the State of Hawai'i. (See "Compl.," Doc. #1-1)

8. Plaintiff's Complaint stated that Plaintiff had been lured into a predatory mortgage loan.

9. On December 16, 2009, Defendants filed a Motion to Dismiss the Complaint. (Doc #6) On April 16, 2010, the Court issued an Order granting Defendant's Motion and dismissed the Complaint without prejudice with one exception, the TILA claim, which the Court dismissed with prejudice. (Doc. #21.) In the Order, the Court directed the Clerk of Court to enter judgment in favor of Defendants if Plaintiff filed to file an amended complaint by May 14, 2010. (Id at 9-10.) As of May 20, 2010, no amended complaint had been filed and, accordingly, the Clerk of Court entered Judgment in Defendants' favor.

10. On May 10, 2011, current counsel for Plaintiff filed an appearance on behalf of Plaintiff and filed a Motion to Set Aside Clerk's Judgment in a Civil Case ("Motion to Set Aside") (Doc. #25.) The primary justification for this Motion was that Plaintiff's former counsel had passed away on April 21, 2010. (Id.) On May 16, 2011, Defendants filed a statement of no position with respect to the Motion to Set Aside. (Doc. #27.)

11. On June 23, 2011, this Court granted Plaintiff's Motion and granted "Plaintiff 60 days from the date of this Order to file an amended complaint consistent with the April 16, 2010 Order." ("June Order," Doc. #28 at 14.)

12. Plaintiff filed his First Amended Complaint ("FAC") two days later on August 24, 2011.

13. On September 7, 2011, Defendants filed their Motion to Dismiss ("Mot.," #30) and on October 7, 2011, Plaintiff filed his Opposition ("Opp'n," Doc. #32.) On October 11, 2011, Defendants filed their Reply. ("Reply," Doc. #33.)

14. On October 27, 2011 the Court granted the Motion to Dismiss and Dismissed the Complaint as to All Defendants Without Prejudice and gave Plaintiff sixty (60) days to file a Second Amended Complaint. ("Order" Doc. #35.)

C. **Alleged Federal Violations or Breach**

15. Plaintiff's Complaints arise out of the subject real estate mortgage transaction or servicing involving his aforesaid real property holding. In Plaintiff's case, the transaction is alleged to be based on dubious and inflated, over-valued, or otherwise fraudulent Income and Expense values, said Appraisal on his property is alleged to be overvalued, the subject Mortgage and payment amounts are further alleged to be vague and unclear, which subjected Plaintiff to predatory lending practices, exorbitant and unauthorized closing costs and fees, and which threaten Plaintiff to deprive him of his home and real estate, his respective equity, life savings or good credit standing, and other severe damages including emotional distress.

16. More specifically, on or about June or July of 2005, an agent from Cambridge Home Loans Inc. whose name Mr. Newcomb can no longer recall, initiated contact with Mr. Newcomb by way of a phone call from California. At the time Mr. Newcomb had a first and second loan on the property in question and the calling agent suggested that Cambridge Home Loans could combine the two loans into a new loan that would be more beneficial for Mr. Newcomb and requested Mr. Newcomb's permission

to pull Mr. Newcomb's credit score. Once Mr. Newcomb gave his permission to Cambridge to pull his credit score and Cambridge learned that Mr. Newcomb had a FICO score in the mid 700's, the agent from Cambridge called almost daily for 30 days trying to, and eventually succeeding in, convincing Mr. Newcomb to enter into a new loan with Cambridge.

The agent, then, asked Mr. Newcomb to provide financial information over the phone by way of a loan application and stated that he (the agent) "would prepare all the necessary documentation so that Mr. Newcomb did not need to be troubled about the paperwork." Mr. Newcomb specifically recalls that he told the agent that his "income was approx. $60,000 per year and that he was retired and disabled and that the major portion of that income was rental income".

When it came time for the appraisal of Mr. Newcomb's property in Kailua-Kona, the agent from Cambridge insisted that, despite the existence of competent appraisers in or about Kailua-Koona, that the appraiser to do the appraisal had to be a particular agent from Hilo and that Mr. Newcomb assume the expense of having that specific appraiser travel back and forth from Hilo.

The Hilo appraiser appraised Mr. Newcomb's property at approximately 1.1 million dollars which Mr. Newcomb now believes was substantially overvalued for the specific purpose of qualifying him for the eventual $800,000 loan.

The fee for the appraisal was an exorbitant $2,000.00.

Although the agent at Cambridge had stated that the new

loan would carry a lower interest rate, when the loan documents arrived for Mr. Newcomb's signature, included in the loan documents was an "interest only" rider for a period of five years. This "interest only rider" had not been discussed earlier and Mr. Newcomb was not given adequete time to assess the consequences.

In addition, the Loan Application falsely stated Mr. Newcomb's income at $120,000 per year. When Mr. Newcomb questioned the false statement, the Cambridge Agent assured him that such a practice "was common in the industry and that it was irrelevant because the only thing that was important was the FICO score that Mr. Newcomb was about to loose out on a "great opportunity".

In addition, Mr.Newcomb does not recall and, therefore denies ever recieving a "Good Faith Estimate as required by the Real Estate Settlement Procedures Act (RESPA).

No amortization Schedule was attached to the loan documents, no brokers fee was shown and the "Loan Disclosure Statements were California Disclosure Statements, not Hawaii Disclosure Statements and Cambridge Home Loans was not registered to do business in Hawaii.

Mr. Newcomb does not recall and, therfore denies, that he recieved notice when the loan was subsequently transferred to the successive defendants in this case.

17. The various Defendants, jointly or severally, are alleged to further have engaged in undisclosed, dubious and illegal violations of prudent mortgage loan standards and

practices and likely their own respective internal policies of mortgage loan placement to the detriment of Plaintiff herein.

18. In addition to or independent of fraudulent appraisals and/or violations of prudent mortgage loan standards and practices stated above, and the various Defendants engaged in further violations of the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2601 et seq., wherein good faith estimates of required disclosures shall be timely made before loan consummation.

19. Further violations of the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. Section 1639 et seq. wherein said Defendants engaged of predatory lending practices at Plaintiff's expense by failure to make timely, clear and conspicuous disclosures in writing, and engaging in a pattern of extending credit to Plaintiff without due regard on his ability to repay in violation of HOEPA and/or other prudent loan practices. <u>The successive defendants are liable on the basis that they aided ad abetted the conduct of Cambridge by failing to exercise due diligence.  § 1641(d)(1) of HOEPA</u>.

20. In addition, Defendants violated provisions of the Fair Credit Reporting Act ("FCRA"), Section 1681, et seq., which bars the wrongful, improper, and illegal reporting of negative information to Plaintiff as to his credit reports and the lowering of credit scores.

21. The Defendants further engaged in violations of the Gramm-Leach-Bliley Act ("GLB"), 15 U.S.C. Section 6801 et seq. by release of private financial information and/or allowing

fraudulent access to Plaintiff's respective private files and records.

C. **State Stautory and/or Common Law Violations**

22. Defendant Cambridge Home Loans is liable to plaintiff under the theory of Fraud in the Inducement.

23. Defendant Cambridge Home Loans engaged in unfair and deceptive trade practices deemed improper by H.R.S. 480-2 et seq., to Plaintiff, a "consumer" herein in the mortgage loan placement or servicing of said loans and are proximately liable for actual and/or treble damages in an amount to be proven.

24. Defendants' further intentionally and/or negligiently concealed material information to Plaintiff which were detrimental to his interests and are liable for damages in an amount to be proven.

25. Defendants have breached their contract with Plaintiff and are liable for breach of contract damages and reasonable attorney's fees and costs.

26. Plaintiff is further entitled to statutory and/or common law rescission and seeks to made whole in this case.

27. Defendants are liable for conversion of Plaintiff's funds and/or have been unjustly enriched at Plaintiff's expense in an amount to be proven.

28. Defendants have breached the implied covenant of fair play and good faith by their violations of Plaintiff's respective contractual rights and obligations and seek damages in an amount

to be proven.

29. Defendants, their affiliates, and/or authorized agents have breached their professional or fiduciary duty of care owed to the Plaintiff, and Plaintiff seeks damages and relief in an amount to be proven.

30. The successive Defendants are liable for the above state and common law violations of Cambridge on the basis that they had knowledge of the wrongful acts of Cambridge or, in the alternative that Cambridge and the successive assignees are so intertwined or interconnected that the agreements by which the assignee "buys" loans from the lender is really a pretense, and thus the assignee should not be able to claim protection of Holder In Due Course status.

## D. **Relief Sought**

31. For the Court to determine by Declaratory Judgment, the parties rights and obligations to the respective mortgage loans or servicing of said loans for the Plaintiff.

32. For general and special damages, compensatory, actual damages, and/or treble or punitive damges in an amount to be proven.

33. For reasonable attorney's fees and costs, and for prejudgment interest to be determined and proven.

34. For such other relief as deemed just and reasonable by the Court.

DATED: Honolulu, Hawai'i December 23, 2011.

TERRY G. OPPERMANN
Attorney for Plaintiff