IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM E. NEWCOMB, also known as BILL NEWCOMB | ) ) ) | CV. NO. 09-00567 DAE-KSC |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CAMBRIDGE HOME LOANS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

On March 5, 2012, the Court heard Defendants Option One Mortgage

Corporation, American Home Mortgage Servicing, Inc., and Deutsche Bank

National Trust Company's (collectively "Moving Defendants") Motion to Dismiss.

Terry G. Oppermann, Esq., appeared on behalf of Plaintiff William Newcomb

("Plaintiff"); Chanelle M. Fujimoto, Esq., appeared at the hearing on behalf of

Moving Defendants.  On March 13, 2012, the Court held a further hearing on the

Motion.  Mr. Oppermann appeared on behalf of Plaintiff; Ms. Fujimoto appeared

on behalf of Moving Defendants.  After reviewing the Motion and the supporting

and opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART Moving Defendants' Motion to Dismiss WITH LEAVE TO AMEND. (Doc. # 37.)

<u>BACKGROUND</u>

On or about October 2005, Plaintiff procured a mortgage loan from Defendant Cambridge Home Loans, Inc. ("Cambridge") in the approximate amount of $800,000 for real property located at 77-107 Queen Kalama Ave., Kailua-Kona, HI 96740. ("SAC," Doc. # 36, ¶ 2). Cambridge subsequently sold or assigned the loan to Option One Mortgage Corporation ("Option One"), American Home Mortgage Servicing, Inc. ("American"), and Deutsche Bank National Trust Company ("Deutsche Bank"). (<u>Id.</u> ¶ 3.)

On October 6, 2009, Plaintiff filed a complaint in the Third Circuit Court of the State of Hawaii. ("Compl.," Doc. # 1-1.) Plaintiff brought thirteen state and federal claims:

- Truth-In-Lending Act ("TILA") Violation (<u>id.</u> ¶ 8).

- Real Estate Settlement Procedures Act ("RESPA") Violation (<u>id.</u> ¶ 8).

- Home Ownership Equity Protection Act ("HOEPA") Violation (<u>id.</u> ¶ 9).

- Fair Credit Report Act ("FCRA") Violation (<u>id.</u> ¶ 10).

- Gramm-Leach-Bliley Act (GLBA) Violation (<u>id.</u> ¶ 11).

- Unfair and Deceptive Trade Practices Act ("UDAP") Violation (id. ¶ 12).

- Negligent or Intentional Concealment (id. ¶ 13).

- Breach of Contract (id. ¶ 14).

- Rescission (id. 15).

- Conversion (id. ¶ 16).

- Unjust Enrichment (id. ¶ 16).

- Breach of Implied Covenant of Fair Play and Good Faith (id. ¶ 17).

- Breach of Professional or Fiduciary Duty (id. ¶ 18).

On November 30, 2009, the complaint was removed to federal court. (Doc. # 1.)  On December 16, 2009, Moving Defendants filed a motion to dismiss the complaint for failure to state a claim.  (Doc. # 6.)  On April 16, 2010, the Court dismissed the complaint and granted Plaintiff leave to amend.[1]  (Doc. # 21.) Plaintiff failed to timely file an amended complaint, and on May 20, 2010, the Clerk of Court entered judgment in favor of Defendants.  (Doc. # 23.)

On May 10, 2011, Plaintiff filed a Motion to Set Aside Clerk's Judgment in a Civil Case, on the grounds that his attorney's death precluded him

---

[1]  The Court granted Plaintiff leave to amend as to all claims except his TILA claim, which was time-barred.  (Doc. # 21 at 9–10.)

from timely filing an amended complaint.  (Docs. # 25.)  On June 23, 2011, the

Court granted Plaintiff's motion.  (Doc. # 28.)

On August 24, 2011, Plaintiff filed his First Amended Complaint

("FAC").  (Doc. # 29.)  Plaintiff's FAC was identical to Plaintiff's original

Complaint except for a few typographical errors and the omission of the TILA

claim.  (See Id.)  Moving Defendants moved to dismiss the FAC, and on October

27, 2011, the Court granted Moving Defendants' Motion pursuant to the law of the

case doctrine.  (Docs. # 30, 35.)   In the Order, the Court stated

> Plaintiff may not refile an amended complaint that is substantively
> identical to either the FAC or the original Complaint.  The amended
> complaint must clearly state how each of the named defendants have
> injured Plaintiff, and it must also clearly identify the statutory
> provisions, if any, under which Plaintiff's claims are brought.  All of this
> must be done clearly and coherently; the Court will not tolerate confused
> and unorganized pleadings.  A failure to comply with any aspect of these
> directions will result in dismissal of these proceedings with prejudice.

 (Doc. # 35, at 9–10.)

On December 23, 2011, Plaintiff filed the present Second Amended

Complaint ("SAC").  (Doc. # 36.)  According to the SAC, on or about June or July

of 2005, an agent from Cambridge Home Loans contacted Plaintiff and suggested

that Cambridge could combine Plaintiff's existing first and second loans on the

property.  (Id. ¶ 16.)  Plaintiff allowed the agent to pull his credit score, after which

the agent called Plaintiff almost daily for 30 days trying to, and eventually

succeeding in, convincing Plaintiff to enter into a new loan with Cambridge.  (Id.)

Plaintiff, over the phone, provided the agent with his financial information,

including that his income was about $60,000 per year, that the major portion of the

income was rental income, and that he was retired and disabled.  (Id.)  The SAC

also alleges that the agent insisted that Plaintiff use a particular appraiser and that

Plaintiff had to assume the expense of having that appraiser travel from Hilo to

Plaintiff's Kailua-Kona property.  (Id.)  The appraiser valued Plaintiff's property at

about $1.1 million, which Plaintiff now believes was inflated for the purpose of

qualifying him for the $800,000 loan.  (Id.)  The fee for the appraisal was $2,000.

(Id.)

The SAC also alleges that the agent stated the new loan would carry a

lower interest rate, but that when Plaintiff received the loan documents to sign, the

documents included an "interest only" rider for a period of five years.  (Id.)

Plaintiff asserts that the rider had not been discussed earlier and that he was not

given adequate time to assess it.  (Id.)  The SAC also alleges that the loan

application falsely stated Plaintiff's income at $120,000 per year, and when

Plaintiff questioned the false statement, the agent assured him that that was

common practice in the industry.  (Id.)  Plaintiff further asserts that he did not

receive certain disclosures, such as a Good Faith Estimate.  (Id.)

On January 6, 2012, Moving Defendants filed the instant Motion to

Dismiss.  (Doc. # 37.)  Plaintiff filed an Opposition to the Motion on February 13,

2012.  (Doc. # 45.)  On February 17, 2012, Defendants filed a Reply.  (Doc. # 46.)

## STANDARD OF REVIEW

I.      Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a

claim upon which relief can be granted.  A complaint may be dismissed as a matter

of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2)

insufficient facts under a cognizable legal claim."  Robertson v. Dean Witter

Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted). "A trial court

may dismiss a claim sua sponte under [Rule] 12(b)(6).  Such a dismissal may be

made without notice where the claimant cannot possibly win relief."  Omar v.

Sea–Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987).  Allegations of fact in the

complaint must be taken as true and construed in the light most favorable to the

plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940,

946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 129 S. Ct. at 1949. When a complaint fails to adequately state a claim, such

deficiency should be "exposed at the point of minimum expenditure of time and

money by the parties and the court." Id. at 558 (citation omitted). If a court

dismisses the complaint or portions thereof, it must consider whether to grant leave

to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave

to amend should be granted "if it appears at all possible that the plaintiff can

correct the defect") (internal quotations and citations omitted).

II.     Federal Rule of Civil Procedure 8

Rule 8 requires that a complaint include a "short and plain statement

of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise,

and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true

substance, if any, is well disguised'" may be dismissed sua sponte for failure to

satisfy Rule 8. Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th

Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir.

1969); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996)

("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet

without simplicity, conciseness and clarity as to whom plaintiffs are suing for what

wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N.

Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed. See McHenry, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 129 S. Ct. at 1949 (2009) (citations and quotations omitted). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." McHenry, 84 F.3d at 1179.

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. Id.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

## DISCUSSION

Defendants argue that the SAC should be dismissed for failure to state a claim upon which relief can be granted and failure to comply with the Court's orders.[2]

## I.    Real Estate Settlement Procedures Act Violations ("RESPA")

Plaintiff alleges that he never received a Good Faith Estimate in violation of RESPA requirements.  (SAC ¶ 18.)  However, no private right of action exists under RESPA for such a violation.  Araki v. One West Bank FSB, 2010 WL 5625969, at *8 (D. Haw. Sept. 8, 2010) (citing Collins v. FMHA-USDA, 105 F.3d 1366, 1367  (11th Cir. 1997) ("[T]here is no private civil action for a violation of 12 U.S.C. § 2604(c), or any regulations relating to it.")); see also Palestini v. Homecomings Fin., LLC, No. 10-1049, 2010 WL 2838639, at *4 (S.D. Cal. July 20, 2010) ("[T]here is no private right of action under [§§ 2603-04] for Defendants' alleged failure to provide accurate disclosures, good faith estimates, or

---

[2]  Defendants argue that Plaintiff has failed to comply with the Court's previous instructions to, inter alia, clearly state how each of the named defendants have injured him.  (Mot. at 2.)

settlement statements."); <u>Pressman v. Meridian Mortg. Co.</u>, 334 F. Supp. 2d 1236, 1242 n.4 (D. Haw. 2004).

To the extent that Plaintiff alleges that he did not receive "notice when the loan was subsequently transferred to the successive defendants," this assertion does not constitute a RESPA violation. RESPA governs the notice requirements where loan servicing is assigned, sold, or transferred, <u>see</u> 12 U.S.C. § 2605, but does not govern notice requirements where a note or mortgage is transferred. In sum, Plaintiff does not state a claim under RESPA.

Accordingly, the Court DISMISSES Plaintiff's RESPA claim as to all Defendants.

## II.    Home Ownership Equity Protection Act

Plaintiff asserts "[f]urther violations of the Home Ownership Equity Protection Act ('HOEPA'), 15 U.S.C. Section 1639, et seq. wherein said Defendants engaged of predatory lending practices at Plaintiff's expense by failure to make timely, clear and conspicuous disclosures in writing, and engaging in a pattern of extending credit to Plaintiff without due regard on his ability to repay[.]" (SAC ¶ 19.) Plaintiff also alleges that "successive defendants are liable on the basis that they aided ad [sic] abetted the conduct of Cambridge by failing to exercise due diligence." (<u>Id.</u>)

HOEPA is a section of TILA which requires specific disclosures and minimum standards for residential mortgage loans.  See 15 U.S.C. § 1639.  To state a cognizable claim, a plaintiff must allege facts supporting a conclusion that HOEPA applies to the loan.  For a loan to be subject to HOEPA, a plaintiff must establish:

> Either the annual percentage rate of the loan at consummation must exceed by more than 10 percent the applicable yield on treasury securities, or the total points and fees payable by the consumer at or before closing has to be greater than 8 percent of the total loan amount, or $400.00.

Lynch v. RKS Mortg. Inc., 588 F. Supp. 2d 1254, 1260 (E.D. Cal. 2008) (citing 15 U.S.C. § 1602(aa)(1) and 12 C.F.R. § 226.32(a)(1)).  Plaintiff has failed to plead facts that support his theory that HOEPA applies in this case.

Moreover, Plaintiff's HOEPA claim is likely time-barred.  Because HOEPA is an amendment to TILA, it is therefore subject to the same statute of limitations.  Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1113 (D. Haw. 2011) (citing Herschelman v. New Century Mortg. Corp., 2010 WL 4448224, at *4 n.3 (D. Haw. Oct. 29, 2010)).  In actions seeking damages under TILA, the claims must be brought within one year from the loan consummation date, but a party may assert the doctrine of equitable tolling to extend that period.  See 15 U.S.C. § 1640(e); Caraang, 795 F. Supp. 2d at 1113.  "[T]he doctrine of equitable tolling

may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986). Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. <u>389 Orange St. Partners v. Arnold</u>, 179 F.3d 656, 662 (9th Cir. 1999). Where the borrower allegedly did not receive the required TILA disclosures, the borrower must bring a rescission claim within three years after the loan consummation. The three-year period is a statute of repose, which is not subject to equitable tolling. <u>See</u> 15 U.S.C. § 1635(f); <u>Caraang</u>, 795 F. Supp. 2d at 1113.

Here, Plaintiff entered into the mortgage loan in October 2005, but did not file his original complaint in state court until four years later, on October 6, 2009. Plaintiff does not allege any facts to establish a basis for equitable tolling. The Court therefore DISMISSES WITHOUT PREJUDICE Plaintiff's HOEPA claim for damages as to all Defendants. To the extent that Plaintiff is making a

HOEPA rescission claim, it is DISMISSED as to all Defendants without leave to amend.[3]

III.   Fair Credit Reporting Act Violations ("FCRA")

Plaintiff alleges that "Defendants violated provisions of the Fair Credit Reporting Act ('FCRA'), Section 1681, et seq., which bars the wrongful, improper, and illegal reporting of negative information to Plaintiff as to his credit reports and the lowering of credit score."  (SAC ¶ 20.)

The FCRA functions "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 52 (2007).  To this end, the Act imposes liability on credit reporting agencies ("CRAs") and furnishers of information to CRAs.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009).  Under the FCRA, a furnisher must provide accurate information to CRAs, 16 U.S.C. § 1681s-2(a), and must take action upon notice of a consumer's dispute of furnished information, 16 U.S.C. § 1681s-2(b).

_____

[3] Courts may raise the statute of limitations as a ground for dismissal *sua sponte* where there has been no waiver of the affirmative defense.  Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 687 (9th Cir. 1993).  Defendants have not waived this affirmative defense; Moving Defendants asserted statute of limitations as a defense in their answer, (Doc. # 8), and Cambridge has not submitted an answer.

The SAC does not contain any factual allegations supporting an FCRA claim. Indeed, the SAC's only references to Plaintiff's credit score are that a Cambridge agent obtained Plaintiff's credit score with Plaintiff's permission, that Plaintiff had a FICO score in the "mid 700's," and that a Cambridge agent informed Plaintiff that "the only thing that was important [regarding the loan application] was the FICO score[.]" (SAC ¶ 16.) Plaintiff makes no allegations about negative or inaccurate information regarding his credit score or that any Defendants furnished such information. The SAC fails to demonstrate, and the Court will not speculate, as to how the FCRA is applicable to Plaintiff's case.

Accordingly, the Court DISMISSES Plaintiff's FCRA claim as to all Defendants, with leave to amend.

IV.    Gramm-Leach-Bliley Act (GLBA) Violations

Plaintiff next asserts that "Defendants further engaged in violations of the Gramm-Leach-Bliley Act ('GLB'), 15 U.S.C. § 6801 et seq. by release of private financial information and/or allowing fraudulent access to Plaintiff's respective private files and records." (SAC ¶ 21.)

The GLBA was enacted to address financial institutions' "affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."

15 U.S.C.A. § 6801(a).  However, there is no private right of action under GLBA.

Enriquez v. Countrywide Home Loans, FSB ---F. Supp. 2d ---, CV No. 10–00405

LEK–RLP, 2011 WL 3861402, at *16 (D. Haw.  Aug. 31, 2011) (citing 15 U.S.C.

§ 6805).  Moreover, even if a private right of action exists, Plaintiff's GLBA claim

remains unsupported by factual allegations.  Nowhere does Plaintiff identify the

private financial information that was allegedly released or the "respective files

and records" allegedly accessed.

Accordingly, the Court DISMISSES Plaintiff's GLBA claim as to all

Defendants.  Because amendment would be futile, the dismissal is without leave to

amend.

V.      Negligent or Intentional Concealment

Plaintiff alleges that "Defendants' [sic] further intentionally and/or

negligently concealed material information to Plaintiff which were [sic]

detrimental to his interests[.]" (SAC ¶ 24.)

As a preliminary matter, Plaintiff does not cite, nor has the Court

found, any authority recognizing a claim for negligent concealment.  Moreover,

concealment contemplates intentional behavior, not negligent behavior.

As to Plaintiff's intentional concealment claim, it sounds in fraud.

Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) ("Fraud can be

averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used).") Consequently, Plaintiff would have to comply with Rule 9(b)'s heightened pleading standards, requiring Plaintiff to "state with particularity the circumstances constituting fraud or mistake." Kearns, 567 F.3d at 1125 (applying Rule 9(b)'s standard to a state fraud claim). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Id. at 1124 (internal quotation marks omitted). Plaintiff would therefore have to include allegations about "the who, what, when, where, and how of the misconduct charged." Id. (internal quotation marks omitted). Plaintiff fails to do so as against Moving Defendants; the SAC does not allege which of the Defendants concealed what material information. Indeed, Plaintiff offers no more than bare assertions without any factual enhancements and thus fails to comply with Rule 8's pleading standards.

Accordingly, the Court DISMISSES Plaintiff's concealment claim as to Moving Defendants, with leave to amend.

VI.    Breach of Contract

"In breach of contract actions, . . . the complaint must, at minimum, cite the contractual provision allegedly violated.  Generalized allegations of a contractual breach are not sufficient."  See Otani v. State Farm Fire & Cas. Co., 927 F. Supp. 1330, 1335 (D. Haw. 1996).

Plaintiff simply alleges that "Defendants have breached their contract with Plaintiff" but does not identify any contract provisions that were allegedly breached.  Plaintiff also fails to indicate how or when Defendants allegedly breached the contract or how he was injured.  Indeed, Plaintiff asserts mere conclusory allegations without any factual support.

Accordingly, the Court DISMISSES the breach of contract claim as to all Defendants, with leave to amend.

VII.   Rescission

Plaintiff lists "rescission" as a claim and alleges he is "entitled to statutory and/or common law rescission[.]" (SAC ¶ 26.)  Rescission, however, is a remedy and not an independent cause of action; thus there must be grounds on which to support an award of rescission.  See Bischoff v. Cook, 185 P.3d 902, 911 (Haw. App. 2008).  Such a remedy "rises or falls with [the] other claims."  Teaupa

v. U.S. Nat. Bank. N.A., —F. Supp. 2d.—, 2011 WL 6749813, at *11 (D. Haw. 2011).

Accordingly, the Court DISMISSES Plaintiff's rescission claim as to all Defendants. Because amendment would be futile, this dismissal is with prejudice.

## VIII. Conversion and/or Unjust Enrichment

Plaintiff alleges that "Defendants are liable for conversion of Plaintiff's funds and/or have been unjustly enriched at Plaintiff's expense in an amount to be proven." (SAC ¶ 27.)

### A. Conversion

The common law tort claim of conversion involves "wrongful dominion over the property of another." Matsuda v. Wada, 101 F. Supp. 2d 1315, 1321 (D. Haw. 1999) (citing Tsuru v. Bayer, 25 Haw. 693, 1920 WL 830 at *2 (Haw. Ter. 1920)). To establish conversion, Plaintiff must show: "(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." Tsuru, 1920 WL 830 at * 2; see also Restatement (Second) of Torts § 222A; Pourny v. Maui Police Dep't., Cnty of Maui, 127 F. Supp. 2d 1129, 1146 (D. Haw. 2000). As conversion is an intentional tort, proof of "a constructive or

actual intent to injure" is required to establish liability. <u>See</u> <u>Brooks v. Dana Nance</u> <u>& Co.</u>, 153 P.3d 1091, 1100 (2007) (citing <u>Iddings v. Mee-Lee</u>, 919 P.2d 263, 271 (1996) ("[T]he commission of an intentional tort includes a constructive or actual intent to injure") (citation omitted)).

Plaintiff fails to allege any of the elements of conversion. Plaintiff does not provide any facts identifying what Defendants allegedly took, how the taking was unwarranted, how Defendants illegally or abusively used the unknown chattel, or that Plaintiff demanded its return.

Accordingly, the Court DISMISSES Plaintiff's conversion claim as to all Defendants, with leave to amend.

B.     Unjust Enrichment

The elements of an unjust enrichment claim are: (1) Plaintiff has conferred a benefit upon Defendant, and (2) retention of that benefit would be unjust. <u>Porter v. Hu</u>, 169 P.3d 994, 1007 (Haw. App. 2007). Further, there must be "an absence of an adequate remedy at law." <u>Id.</u> Thus, as a general rule, "[a]n action for unjust enrichment cannot lie in the face of an express contract." <u>Id.</u> at 1006; <u>see also</u> <u>AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.</u>, CV. No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008) ("It is also well

settled in federal courts that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter.").

Plaintiff fails to state a claim for unjust enrichment. Plaintiff does not allege anywhere in the complaint that Defendants have received any benefit from Plaintiff or how its retention would be unjust. Additionally, the mortgage loan is an express contract governing the rights and obligations of the parties. Therefore, Plaintiff cannot bring this action for unjust enrichment.

Accordingly, the Court DISMISSES Plaintiff's Unjust Enrichment claim as to all defendants, with leave to amend.

IX.    Breach of the Implied Covenant of Fair Play and Good Faith

Plaintiff next alleges that "Defendants have breached the implied covenant of fair play and good faith by their violations of Plaintiff's respective contractual rights and obligations[.]" (SAC ¶ 28.)   This claim appears to assert the tort of "bad faith."  See Best Place v. Penn Am. Ins. Co., 920 P.2d 334, 342 (Haw. 1996) (adopting tort of bad faith or breach of implied covenant of good faith and fair dealing in an insurance contract).

Hawaii contract law recognizes that "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." Simmons v. Puu, 94

P.3d 667, 673 (Haw. 2004). However, although causes of action based on bad faith have been accepted for insurance contracts, the tort has not recognized in Hawaii for mortgage loans. <u>Marzan v. Bank of America</u>, 779 F. Supp. 2d 1140, 1147 (D. Haw. 2011). To the contrary, the Hawaiʻi Supreme Court has refused to extend the tort to a claim of a breach of an employment contract and, in so doing, used language indicating that it would be unlikely to extend it to a breach of a mortgage loan contract. <u>See Francis v. Lee Enterprises, Inc.</u>, 971 P.2d 707, 711 (Haw. 1999) ("[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion.").

Here, the SAC fails to allege any "special relationship characterized by elements of fiduciary responsibility, public interest, and adhesion." <u>See Francis</u>, 971 P.2d at 711. Nearly all of Plaintiff's new allegations in the SAC also pertain to pre-contract actions. <u>See Larson v. Homecomings Fin., LLC</u>, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law."). Further, Plaintiff does not provide any facts showing how he was deprived of the benefit of the loan

agreement.  In sum, Plaintiff fails to state a claim for breach of the implied

covenant of good faith and fair dealing.

Accordingly, the Court DISMISSES Plaintiff's breach of the covenant

of "fair play and good faith" claim as to all defendants, with leave to amend.

X.     Breach of Fiduciary Duties

Plaintiff alleges that "Defendants, their affiliates, and/or authorized

agents have breached their professional or fiduciary duty of care owed to the

Plaintiff."  (SAC ¶ 29.)

It is well-established that absent "special circumstances," lenders

generally owe no fiduciary duties to their borrowers.  See, e.g., Isagawa v.

Homestreet Bank, 769 F. Supp. 2d 1225, 1237 (D. Haw. 2011); Bank of America

Corp. v. Superior Court, 130 Cal. Rptr. 3d 504, 510 n.7 (Cal. Ct. App. 2011)

("Absent special circumstances, a loan transaction is at arm's length and there is no

fiduciary relationship between the borrower and lender."); Jones v. Thompson, 338

S.W.3d 573, 583 (Tex. App. 2010) ("[N]o fiduciary relationship exists between a

lender and a borrower."); Miller v. U.S. Bank of Wash., 865 P.2d 536, 543 (Wash.

App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its

borrower."); Huntington Mortg. Co. v. DeBrota, 703 N.E.2d 160, 167 (Ind. App.

1998) ("A lender does not owe a fiduciary duty to a borrower absent some special

circumstances."); <u>Ellipso, Inc. v. Mann</u>, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature."); <u>BHC Interim Funding, L.P. v. Finantra Capital, Inc.</u>, 283 F. Supp. 2d 968, 989 (S.D. N.Y. 2003) ("[T]he relationship between a lender and borrower is not fiduciary in nature.").

Plaintiff makes no allegations suggesting that his relationship with Defendants is anything other than an ordinary, arm's-length, lender-borrower relationship. To be sure, merely stating that Defendants "breached their professional or fiduciary duty of care" does not establish the existence of a fiduciary duty.

Accordingly, Plaintiff's breach of fiduciary duty claim is DISMISSED as to Moving Defendants with leave to amend.

## XI.    Fraud in the Inducement

Plaintiff asserts that "Defendant Cambridge Home Loans is liable to plaintiff under the theory of Fraud in the Inducement."[4]  (SAC ¶ 22.) .

_____

    [4]  Defendants note that the SAC adds a claim for fraud in the inducement even though the Court's April 16, 2010 Order dismissing Plaintiff's original complaint barred Plaintiff from adding new claims.  (Mot. at 13.)  However, because the Court's October 27, 2011 Order dismissing Plaintiff's FAC did not impose a limitation, the Court will allow Plaintiff's fraud claim.

Plaintiff fails to state a claim for fraud in the inducement.  In federal court, "[t]o determine if the elements of fraud have been pleaded to state a cause of action we look to state law."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  Under Hawaii law, a plaintiff alleging fraud must establish: "(1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance." Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 228 P.3d 341, 362–63 (Haw. Ct. App. 2010) (citing Hawaii's Thousand Friends v. Anderson, 768 P.2d 1293, 1301 (Haw. 1989)).

Here, Plaintiff has not alleged that he relied upon any alleged representations to his detriment.  For example, it is not clear to the Court how Plaintiff could have reasonably relied on Cambridge's alleged misrepresentation regarding his own income in the loan application, which was presumably a representation to a third-party, and not to Plaintiff.

Moreover, to the extent that Plaintiff is seeking to rescind the mortgage loan under this theory,[5] Plaintiff must establish that the transaction is void rather than merely voidable.  See Beazie v. Amerifund Financial, Inc., 2011

_____

[5] Because Plaintiff alleged a separate claim for statutory and common law rescission, the Court will construe the SAC as seeking rescission under Plaintiff's fraud claim.

25

WL 2457725, at *10 (D. Haw. June 16, 2011) ("[A] void note is invalid even as to a bona fide purchaser, whereas a voidable document cannot be set aside as to a bona fide purchaser.") Therefore, the mortgage transaction can only be cancelled against the Moving Defendants as bona fide purchasers if Plaintiff can establish fraud in the factum, not fraud in the inducement. See Beazie, 2011 WL 2457725, at *10; Adair v. Hustace, 640 P.2d 294, 299 n.4 (Haw. 1982) ("[A]n action to cancel a deed for fraud may be maintained against a true bona fide purchaser if the alleged fraud is fraud in the factum, but not if it is fraud in the inducement."). "Fraud in the factum is fraud which goes to the nature of the document itself." Aames Funding Corp. v. Mores, 110 P.3d 1042, 1050 (Haw. 2005) (quotations and citation omitted). In contrast, "fraud in the inducement is fraud which induces the transaction by misrepresentation of motivating factors." Id. at 1050–51. Here, Plaintiff only asserts fraud in the inducement.

At the March 13, 2012 hearing, Plaintiff's counsel acknowledged that his client's fraud in the inducement claim is based on alleged acts by Cambridge, but argued that the claim was still viable as against the Moving Defendants.[6]

---

[6] Plaintiff's counsel cited as authority Countrywide Home Loans Servicing, L.P. v. Heck, 2011 WL 281148 (Ohio Ct. App. Jan. 14, 2011), an unpublished, out-of-district, state case. Plaintiff's reliance on Heck, however, is misplaced. In construing an Ohio statute outlining viable defenses against a holder in due course
(continued...)

Plaintiff argued that Moving Defendants cannot be protected as holders in due

course, but Plaintiff's SAC fails to sufficiently allege facts supporting such a

conclusion.[7]

Accordingly, the Court DISMISSES the fraud in the inducement

claim as to Moving Defendants.  Because the deficiencies here are factual rather

than as a matter of law, the Court will grant leave to amend as to this claim.

---

[6](...continued)
that is virtually identical to Hawaii's, the <u>Heck</u> court found that mortgagors could
not succeed in alleging fraud against the holders in due course based on allegations
of income inflation in the loan documents and unsupported allegations of not
having a reasonable opportunity to examine.  <u>Id.</u> at *3.  Plaintiff here advances
substantially similar arguments, and thus, <u>Heck</u> in fact undermines Plaintiff's
argument.  The Court also notes that although the Ohio court references the term
"fraud in the inducement," the court's analysis is more akin to fraud in the factum.
<u>Id.</u> at *3 (stating that appellants "fail to inform in what manner they were denied a
reasonably opportunity to determine the true character of the document they were
signing").

[7] The SAC asserts that Moving Defendants are liable for the "state and
common law" claims against Cambridge because "they had knowledge of the
wrongful acts of Cambridge or, in the alternative that Cambridge and the
successive assignees are so intertwined or interconnected that the agreements by
which the assignee 'buys' loans from the lender is really a pretense, and thus the
assignee [sic] should not be able to claim protection of Holder in Due Course
status."  (SAC ¶ 30.)  Plaintiff's theory of liability is entirely conclusory.  Plaintiff
does not allege any facts supporting the assertion that Moving Defendants knew of
Cambridge's wrongful acts or that Moving Defendants are "intertwined or
interconnected."

XII.    Unfair or Deceptive Acts or Practices ("UDAP")

Plaintiff alleges that Defendant Cambridge "engaged in unfair and deceptive trade practices deemed improper by H.R.S. 480-2 et seq., to Plaintiff, a 'consumer' herein in the mortgage loan placement or servicing of said loans[.]" (SAC ¶ 23.)

H.R.S. § 480-2(a) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mortgage loans made by financial institutions fall within the scope of Hawaii's unfair and deceptive trade practices statute.  Haw. Cmty. Fed. Credit Union v. Keka, 11 P.3d 1, 15 (Haw. 2000) ("[T]he transaction at issue in the present matter falls within the ambit of HRS ch. 480, inasmuch as (1) a loan extended by a financial institution is activity involving 'conduct of any trade and commerce' and (2) loan borrowers are 'consumers' within the meaning of HRS § 480-1 (1993).").

A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Balthazar v. Verizon Haw., Inc., 123 P.3d 194, 202 (Haw. 2005).  An act is deceptive when it is "(1) a representation, omission, or practice[ ] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3) [ ] the representation, omission, or practice is material."

Courbat v. Dahana Ranch, Inc., 141 P.3d 427, 435 (Haw. 2006). "[T]he plaintiff need not establish an intent to deceive on the part of the defendant, nor any actual deceit." Id. at 435 n.9.

Plaintiff alleges, inter alia, that Cambridge called Plaintiff daily for nearly a month to persuade him to enter a new loan, required him to use a particular appraiser who allegedly overvalued his home for the purpose of qualifying him for a loan, and included in the loan an interest-only rider that was not previously discussed and that he did not have time to assess. (SAC ¶ 16.) Taken together, these allegations form a plausible claim for relief under UDAP; if true, they constitute actions that could be likely to mislead reasonable consumers or a practice that offends public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Courbat, 141 P.3d at 435; Balthazar, 123 P.3d at 202.

Plaintiff's allegations are only against Cambridge. Although a section 480-13 damage claim based on violations of section 480-2 may only be asserted against the wrongdoer, see Young v. Bank of New York Mellon, 2012 WL 262640, at * 8 (D. Haw. Jan. 30 2012), a rescission claim under Chapter 480 can

stand against subsequent assignees if the contract is void.[8]  Section 480-12

provides that "[a]ny contract or agreement in violation of this chapter is void and is

not enforceable at law or in equity."  See Skaggs v. HSBC Bank USA, N.A., CV.

No. 10-00247 JMS/KSC, 2011 WL 3861373 at *7 (D. Haw. Aug. 31, 2011)

("[Section] 480-12 can nevertheless provide a basis for rendering . . . [a] note and

mortgage 'void and unenforceable' based on certain types of unfair or deceptive

acts or practices committed by others in the loan consummation process.")

Plaintiff has alleged that Cambridge assigned or sold the loans to Moving

Defendants.  (SAC ¶ 3.)  Thus, if Cambridge violated Chapter 480 and the loan is

void, Plaintiff can seek rescission against the Moving Defendants.  Young, 2012

WL 262640 at *9 ("[A] rescission claim under Chapter 480 can stand against

subsequent assignees if the contract is void[.]").  The Court notes, however, that a

plaintiff seeking affirmatively to void a mortgage transaction under § 480-12 must

be able to "place the parties in as close a position as they held prior to the

transaction."  Beazie, 2011 WL 2457725, at *13; see also Hiraga v. Baldonado, 31

P.3d 222, 229 (Haw. App. 2001) (holding that even though plaintiff-general

contractor could not enforce a contract that was void pursuant to HRS § 480-12, he

---

[8]  Because Plaintiff alleged a separate claim for statutory and common law
rescission, the Court will construe the SAC as seeking rescission under Plaintiff's
UDAP claim.

could still recover in quantum meruit for work performed according to the contract).

Accordingly, the Moving Defendants' motion to dismiss is DENIED as to the UDAP claim.

XIII.  Leave to Amend

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Further, "requests for leave should be granted with extreme liberality."  Moss v. U.S. Secret Service, 572 F.3d 962, 792 (9th Cir. 2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  Id.  In determining whether to grant leave to amend, courts consider factors including: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment.'"  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'"  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058

(9th Cir. 2011) (quoting <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160

(9th Cir. 1989)).

The Court notes that Plaintiff has improved his complaint by adding

factual allegations, although many of his claims are still deficient.  Because most of

the claims are deficient as a result of insufficient facts, rather than as a matter of

law, the Court will grant Plaintiff one last opportunity to amend his complaint,

except for his Rescission, RESPA, GLBA, and HOEPA rescission claims.  Plaintiff

is therefore granted 30 days to amend his complaint.

However, the Court reminds Plaintiff that this will be his final

opportunity to amend his complaint.  If Plaintiff chooses to amend his complaint,

the Court warns Plaintiff that any deficiencies will result in a dismissal of the

action.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS IN PART AND**

**DENIES IN PART** Defendants' Motion to Dismiss WITH LEAVE TO AMEND

(Doc. # 37).  The Motion is **DENIED** as to Plaintiff's UDAP claim for rescission.

The Motion is **GRANTED** insofar as the Court **DISMISSES WITH**

**PREJUDICE** the following claims as to all defendants:  RESPA, GLBA, HOEPA

(rescission), and Rescission.  The Court **DISMISSES WITHOUT PREJUDICE**

the following claims as to all defendants:  HOEPA (damages), FCRA, Breach of

Contract, Conversion, Unjust Enrichment, and Breach of Implied Covenant of Fair

Play and Good Faith.  The Court also **DISMISSES WITHOUT PREJUDICE** the

following claims as to Moving Defendants: Concealment, Breach of Fiduciary

Duty, and Fraud in the Inducement.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 20, 2012.

_____
David Alan Ezra
United States District Judge

<u>Newcomb v. Cambridge Home Loans, Inc., et al.,</u> CV. No. 09-00567 DAE-KSC
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS